ATTORNEY GENERAL, *ex rel.* DANHOF, *v.* RENIHAN.

1. COURTS — CONSTITUTIONAL LAW — SUPERIOR COURT OF GRAND RAPIDS—JUDGES—GRAND RAPIDS CHARTER.
    Act No. 49, Pub. Acts 1875, chapter 32, Compiled Laws, provides that the superior court of Grand Rapids shall be a court of record and have a seal and that in the

case of the absence of the judge, or illness, or other disqualification, the judge of the circuit court shall act as the judge of the superior court and that it shall be the duty of the common council of the city to hold an election to fill any vacancy in the office of the judge of the superior court. It is further provided by said chapter that the judge shall be paid from the treasury of the State the same salary as circuit judges. The court is given original and concurrent jurisdiction with the circuit court and it is provided that the practice and proceedings shall be the same as prescribed for the circuit courts and that the rules shall be the same as the circuit court rules of practice. Section 10, chapter 2, of the charter of the city of Grand Rapids, as amended, enacts that an office is to be deemed vacant upon the death or resignation of the incumbent and that in any of the general elective offices of the city vacancies shall be filled by election held under the direction of the common council and appointive offices vacated shall be filled by the mayor. Section 1092, 1 Comp. Laws, makes all courts that have seals, courts of record. *Held*, that the power to fill the vacancy in the office of the judge of the superior court of Grand Rapids is vested in the governor under sections 1, 17, and 20 of the Constitution, adopted in 1908, which effected a change in the then existing rule.

2. CONSTITUTIONAL LAW—COURTS—COURTS OF RECORD.

The provisions of article 7 of the Constitution, providing that the circuit and probate courts of each county shall be courts of record, do not exclude or prohibit other courts from being courts of record and it has been so held by the opinions of the Supreme Court. In naming certain courts which should constitute courts of record it was not intended to exclude others from the same class which might be established by the legislature, since under section 1 of said article the judicial power is vested in certain courts named and such other courts of civil and criminal jurisdiction inferior to the Supreme Court as the legislature may establish by general law.

Quo warranto by Grant Fellows, attorney general of the State of Michigan, on the relation of Peter J. Danhof, against Joseph Renihan, to test the title of respondent to the office of judge of the superior court

184 Mich.—18.

of Grand Rapids.   Submitted February 23, 1915.
(Calendar No. 26,638.)   Writ granted March 5, 1915.
Rehearing denied April 28, 1915.

*Grant Fellows,* Attorney General (*Myron H. Walker,* of counsel), for relator.

*R. M. Ferguson* and *Charles A. Watt* (*Roger I. Wykes,* of counsel), for respondent.

STONE, J.   This is a proceeding by information in the nature of a *quo warranto* to test the right of the respondent to hold the office of judge of the superior court of Grand Rapids, to fill a vacancy caused by the death of Hon. William J. Stuart, the late incumbent, on January 20, 1915.   The facts are not in dispute. Acting on the advice and opinion of the city attorney, the common council of Grand Rapids, at a regular session thereof, held on February 1, 1915, elected the respondent to fill the vacancy.   On the following day respondent took and filed the constitutional oath of office, and also filed an acceptance of the same, with the city clerk, and proceeded to hold said office and perform the duties of a judge of said court.   The relator was appointed on the 5th day of February, 1915, by the governor of the State, and took and filed the constitutional oath of office with the said city clerk as prescribed by the act creating the superior court of Grand Rapids.   Act No. 49, Pub. Acts 1875, being chapter 32, 1 Comp. Laws.   Relator, immediately thereafter on the same day, made demand on the respondent to surrender, deliver, and turn over the office of judge to him, which was refused, whereupon the information was filed in this court.

Section 1 of the above act creating said court reads as follows:

"That there shall be a municipal court in and for the city of Grand Rapids, which shall be called, 'the

superior court of Grand Rapids,' which shall be a court of record and have a seal to be provided by said city, and whose first term shall commence on the first Tuesday of June, in the year of our Lord one thousand eight hundred and seventy-five."

Section 5 of the act provides as follows:

"If in case of absence from the city of the judge of said superior court, illness or any legal disqualification, or if a vacancy occur in his office, the judge of the circuit of which Kent county shall form a part shall act as the judge of said superior court, and as such judge shall have and exercise all the powers and duties of the judge of said court until he shall resume his office or such vacancy be filled. It shall be the duty of the common council of said city to cause an election to be held in said city to fill any vacancy in the office of the judge of said superior court, the same as is provided by the charter of said city in case of vacancies in the office of mayor thereof."

Section 6 provides that the judge of said court shall receive from the treasury of the State the same annual salary as may be payable to circuit judges.

The jurisdiction of the court is defined by section 13, as amended. It has original and concurrent jurisdiction with the circuit court for the county of Kent, and within its territorial limits the jurisdiction conferred is as extensive and broad as that of the circuit court.

By section 15 it is provided that the practice and proceedings in said court shall be the same as those prescribed by law for circuit courts, except as otherwise limited by the act, and the rules prescribed by the Supreme Court for the guidance and practice of circuit courts shall be the rules of said superior court so far as the same may be applicable; but the said court has the same power of making rules for said court as is given to circuit courts, or the judges thereof.

The fifth paragraph of the information states:

"That the city of Grand Rapids is a duly organized municipal corporation, doing business under and in pursuance of its charter, viz., Act No. 593 of Local Acts of 1905, and the acts amendatory thereof.

"That in and by the repealing clause of Act No. 593 last aforesaid, the act creating the said superior court aforesaid and the amendments thereof were not affected or repealed thereby."

The above paragraph is admitted by respondent's plea.

The sixth paragraph of the information is as follows:

"That section 10, title II, of said charter, relating to election and appointment of officers provides as follows, viz.:

"SEC. 10.   (As amended in 1907 [Local Acts 1907, No. 749]).   An office shall be deemed vacant upon the death or resignation of the incumbent or upon such incumbent ceasing to possess the qualifications of an elector of the ward or city, or upon impeachment or removal from office, or upon the failure of an officer elected to qualify.   The office of mayor, city attorney, city treasurer, comptroller, clerk, and marshal shall be deemed vacant whenever the incumbent thereof shall be impeached or removed, as in this charter provided, or shall be absent from the city for a period of thirty days without leave of the common council, or shall not perform the duties of his office for a like period without such leave.   The office of alderman shall be deemed vacant whenever the incumbent thereof shall cease to be a resident of the ward from which he was elected, or fails to attend four successive regular meetings of the common council, unless excused by the common council or by the consent of the mayor first obtained, or shall be removed from office; but a change of the boundaries of any ward shall not be deemed a change of residence of any alderman so as to create or cause any vacancy in such office.   A vacancy in any office, caused by the failure of any person elected to qualify therefor, as prescribed in this charter, or made consequent upon the judgment of any court or upon any failure to elect or qualify in any of the cases specified in this charter, must be filled

in the following manner, unless otherwise specially provided in this act.

"(*a*) In the office of alderman, by an election of the common council, to continue until the appointee's successor shall be elected and qualified.

"(*b*) In any of the general elective offices of the city, by an election by the common council until the successor of such officer whose office has become vacant, shall have been elected at the next general municipal election and qualified.

"(*c*) In all appointive offices by the appointment of the mayor for the unexpired term of office which has become vacant, subject to confirmation by the council in those cases where confirmation is required of the original appointment."

The foregoing quotations are admitted by the respondent, in his plea, to be correct.

Respondent in his plea cites also sections 35 and 36, known as the nonpartisan provisions of the city charter approved by the electors at the spring election of 1913. They are respectively as follows:

"SEC. 35.   The following officers of the city shall be elected, hold office, possess the qualifications and have the powers and perform the duties as provided in this title and in the general or special laws of this State, viz.: One mayor, one city attorney, one comptroller, one city clerk, one city treasurer, one judge and one clerk of the superior court of Grand Rapids, one judge and one clerk of the police court, two justices of the peace and five library commissioners; also two aldermen and one constable from each ward, and such other elective officers of the city, if any, whose offices are now or may hereafter be created by law."

"SEC. 36.   All words, clauses and phrases of the present charter and all special acts, supplementary to the existing charter of this city relative to the election and nomination of officials named in this title, are hereby repealed in so far as they in any manner contravene the provisions of this title: Provided, that title 14 of Act No. 593 of the Local Acts of 1905, being the title covering the board of education, and the acts, amendatory thereto, are hereby continued in

full force and effect. All other special acts supplementary to the existing charter of the city are hereby repealed so far as inconsistent with the provisions of this title and so far consistent therewith are hereby continued in force, until the same are superseded by lawful authority exercised under this charter or otherwise."

It is the claim of the respondent, as we understand the record, that under the provisions of the charter above quoted, the common council had the power to fill the vacancy by election, and that by reason of said election he is rightfully entitled to hold the office of judge of said court until the next general municipal election. On the other hand, it is the claim of the relator that the power to fill said vacancy is solely and exclusively vested in the governor of this State, by virtue of the following sections of article 7 of the Constitution, viz.:

"SECTION 1. The judicial power shall be vested in one Supreme Court, circuit courts, probate courts, justices of the peace and such other courts of civil and criminal jurisdiction, inferior to the Supreme Court, as the legislature may establish by general law, by a two-thirds vote of the members elected to each house. * * *

"SEC. 17. The Supreme Court and the circuit and probate courts of each county shall be courts of record, and shall each have a common seal. * * *

"SEC. 20. When a vacancy occurs in the office of judge of any court of record, it shall be filled by appointment of the governor, and the person appointed shall hold the office until a successor is elected and qualified. When elected, such successor shall hold the office the residue of the unexpired term."

If relator is correct in his position, it follows that no power or authority to fill said vacancy is conferred on or granted to the common council under its charter, or, if any, it is in conflict with the Constitution, and therefore void. The language of section 20 is very plain, and ought to be easily understood. It

could not be made plainer that the governor shall fill a vacancy occurring in the office of judge of any court of record. *Any* court of record means *every* court of record. The language is unlimited in its scope.

Counsel for respondent, while conceding that the superior court of Grand Rapids is a court of record, contend that it is not a court of record within the contemplation of section 20, above quoted. They say:

"At the outset we admit that the superior court of Grand Rapids is a court of record, but we deny that it is a court of record within contemplation of this provision of the Constitution, or that it was intended by this provision to confer upon the executive authority to make appointments to fill vacancies in the office of the judge of such court."

But, as we have said, the provisions of section 20 apply, in language, to *any* and to *all* courts of record in the State. Counsel further contend that the term "court of record," as used in section 20, is limited and controlled by the provisions of section 17, above quoted. Because the Constitution states that certain enumerated courts shall be courts of record, does it exclude or prohibit other courts from being courts of record? Was it the intention of the people adopting the Constitution in the use of the language of section 17 to declare that the superior court of Grand Rapids and the recorder's court of Detroit were to lose their character of courts of record, or was the language prohibitive or restrictive? We do not think so. It is not necessary to stop and define a court of record, for respondent admits that the superior court of Grand Rapids is such a court. Its jurisdiction has been defined by this court as that of a court of record. *Heath* v. *Judge,* 37 Mich. 372.

In *Covell* v. *Treasurer of Kent County,* 36 Mich. 332, it was held that it was a constitutional court, *i. e.,* a court which the legislature had power under the Constitution to establish.

We have already referred to the fact that the act creating the court declared that it should be a court of record having a seal. The judge is a State officer. *Douvielle* v. *Supervisors*, 40 Mich. 585. Since 1846 we have had a statute declaring that "the several courts of this State having a seal are courts of record." Section 1092, 1 Comp. Laws (5 How. Stat. [2d Ed.] § 12583).

This court held in *Nichols* v. *Judge of Superior Court*, 130 Mich. 187 (89 N. W. 691), in speaking of the act establishing the superior court, that:

"Under this law the superior court is subject only to the control of the Supreme Court. It is governed by the same rules of practice as the circuit courts. Appeals are taken from it to the Supreme Court. In short, it is subject to the mandate of this court in precisely the same manner and to the same degree that the circuit courts are."

See, also, *Wyandotte Rolling Mills Co.* v. *Robinson*, 34 Mich. 428, as to the jurisdiction of the old superior court of Detroit.

It is inconceivable that the framers of the present Constitution, or the people adopting it, were ignorant of, or unfamiliar with, the law defining the courts of record then in the State, or the act establishing the superior court of Grand Rapids. In naming certain courts in section 17 that should be courts of record did they intend to exclude other courts from that class which had been, or might be, created by the legislature, when by section 1 it had been declared that the judicial power should be vested in certain named courts, "and such other courts of civil and criminal jurisdiction, inferior to the Supreme Court, as the legislature might establish by general law?" To ask this question is to answer it in the negative.

The construction which we place on section 17 is that it is declaratory, declaring that the Supreme Court, the circuit and the probate courts shall be

courts of record, but that it is not prohibitive, restrictive, or exclusive, and does not preclude other courts from being courts of record within the meaning of the provisions of section 20. The Constitution may declare that certain courts shall be courts of record. The legislature (acting within the limits of section 1 of said article) may declare that other courts created by it shall be courts of record. But all are courts of record, "and when a vacancy occurs in the office of judge of any court of record," the governor may fill the same temporarily by appointment. This construction gives full force and effect to all the provisions of the Constitution under consideration, and saves the incongruity that must exist if we adopt the view of the respondent that the term *"any court* of record" is not broad enough to include *all courts* of record.

The real question is, What was the intent of the people in adopting the Constitution? We quote from Cooley's Constitutional Limitations (7th Ed.), page 101:

"For as the Constitution does not derive its force from the convention which framed, but from the people who ratified it, the intent to be arrived at is that of the people, and it is not to be supposed that they have looked for any dark or abstruse meaning in the words employed, but rather that they have accepted them in the sense most obvious to the common understanding, and ratified the instrument in the belief that that was the sense designed to be conveyed."

We think it must be held that the present Constitution made a substantial change in the provisions of the Constitution of 1850 relating to vacancies in the courts. Section 14, art. 6, of that instrument provided that:

"When a vacancy occurs in the office of judge of the Supreme, circuit or probate court, it shall be filled by appointment of the governor."

That provision designated particular courts, but in

the present Constitution the language used refers to and designates a class of courts, to wit, "any court of record." Language could not be plainer. It has been said that Constitutions are made for the government and guidance of the "plain, common people," and they should not be subjected to such technical construction as to·do away with their plain provisions. When counsel concede, as they do, that the superior court of Grand Rapids is a court of record, we think it should be held that that court is included in the provisions of section 20, above quoted, and that since the adoption of the present Constitution neither the legislature nor the people could longer prescribe the method of filling the vacancy. When adopted, the Constitution became the paramount law of the State, and any vacancy thereafter occurring "in the office of judge of *any* court of record" must be filled by the appointment of the governor. This is the plain, clear meaning of the provision, and it should not be frittered away, or be ignored or abrogated by the courts. If we are correct in this conclusion, but little more need be said. Any legislation or action of the people, local or otherwise, must be "subject to the Constitution." See sections 20 and 21, art. 8, of the Constitution.

The terse language of Chief Justice Marshall in *Marbury* v. *Madison*, 1 Cranch, 137-178, is appropriate here:

"If two laws conflict with each other, the courts must decide on the operation of each. So if a law be in opposition to the Constitution, if both the law and the Constitution apply to a particular case, so that the court must either decide that case conformably to the law, disregarding the Constitution, or conformably to the Constitution, disregarding the law, the court must determine which of these conflicting rules governs the case. This is of the very essence of judicial duty. If, then, the courts are to regard the Constitution, and

the Constitution is superior to any ordinary act of the legislature, the Constitution, and not such ordinary act, must govern the case to which they both apply."

The Constitution, section 1 of the schedule, declares that:

"The common law and the statute laws now in force, *not repugnant to this Constitution*, shall remain in force until they expire by their own limitations, or are altered or repealed."

Here again we are brought back to the provisions of the Constitution, which are controlling.

We do not think it necessary to pass judgment upon any part of the "Address to the People" submitting the Constitution, nor on the claimed incongruous or inconsistent provisions of the Constitution. They do not relate to the subject we are here considering, *i. e.*, where the appointing power rests "when a vacancy occurs in the office of judge of any court of record." In our opinion that power, under the Constitution, is vested in the governor.

It follows that a judgment of ouster against the respondent should be entered. It is so ordered.

BROOKE, C. J., and MCALVAY, KUHN, OSTRANDER, BIRD, MOORE, and STEERE, JJ., concurred.